## JUDITH M. BARNES

## V.

## GERALD E. BARNES

Record No. 821956

March 7, 1986

Present: All the Justices

*Robert G. Culin, Jr.* for appellant.
*Edward R. Johnson* for appellee.

COCHRAN, J., delivered the opinion of the Court.

The novel question presented in this appeal is whether a party to a separation agreement may rescind the agreement upon discovering marital misconduct by the other party that occurred prior to the separation.

Judith and Gerald Barnes, each represented by counsel, negotiated a separation agreement dated December 8, 1980, under which Gerald agreed to pay Judith $800 twice each month until a final agreement is reached, or an award of support is made by a court of proper jurisdiction, or settlement is made on the jointly owned residence of the parties, whichever shall first occur. Gerald also agreed to buy her a new Honda automobile. Gerald made three payments of $800 each but in February 1981 attempted to rescind the agreement on the ground that Judith had been unfaithful to him during their marriage. Judith filed a motion for judgment against Gerald in the trial court seeking $1,600 in past due payments and $8,000 for a new car pursuant to the agreement. Gerald, denying liability, filed a counterclaim for the $2,400 previously paid, alleging that Judith had fraudulently induced him to execute the agreement.

After conducting an *ore tenus* hearing, the trial judge, by letter opinion dated November 9, 1981, concluded that Gerald had established "by clear, cogent and convincing evidence" that he was fraudulently induced to enter into the separation agreement because Judith deceitfully engaged in misconduct with other men and kept knowledge of her conduct from Gerald. Judith moved for reconsideration but the trial judge reaffirmed his earlier decision. By final order of July 28, 1982, judgment was entered against Judith on her claim and against Judith in the sum of $2,400 with interest from February 1, 1981, on Gerald's counterclaim.

The record shows that Gerald's source of information concerning Judith's extramarital adventures was Muriel Nielson, a former friend of Judith's. Nielson had been a fellow student of Judith's at a community college. In 1980, the two went on trips together. In the latter part of that year Nielson moved into the Barnes's house, but Judith forced her to leave after the marital separation.

Nielson then went to Gerald in February 1981 with an account of amorous activities in which Judith engaged with several men prior to her separation from her husband. Nielson testified by deposition, admitted into evidence over Judith's objection, that Judith had sexual intercourse with one man in Tahiti and with another in New York City. Judith admitted having spent the night in the same room with each of the men identified by Nielson but denied having had sexual intercourse with either. The trial judge, in his letter opinion, stated that he did not have to determine that Judith had committed adultery to conclude, as he did, that she had fraudulently induced Gerald to enter into the separation agreement. He found from the evidence that Judith had engaged in misconduct and that she had kept knowledge of her misconduct from Gerald because she knew that if he were aware of it he would not have executed the agreement.

Judith concedes the facts, viewed in the light most favorable to Gerald, establish that she engaged in marital misconduct, that Gerald was unaware of her actions, and that, in signing the agreement, he relied on her fidelity. She contends, however, that she had no duty to disclose acts of marital misconduct because the confidential relationship between them as husband and wife had ended before they executed the separation agreement. Accordingly, she says, she did not fraudulently induce Gerald to sign the agreement and he is not entitled to rescind the contract.

Gerald argues, on the other hand, that the relationship of trust and confidence inherent in the marital relationship imposed on Judith a duty to disclose her alleged misconduct. He contended before us that the confidential relationship between spouses continues after the separation of the parties until the actual dissolution of the marriage. He relies heavily on *Sabbarese* v. *Sabbarese*, 104 N.J. Eq. 600, 603, 146 A. 592, 593 (Ch. 1929), *aff'd*, 107 N.J. Eq. 184, 152 A. 920 (N.J. 1930), a case in which the court held that a wife's failure to disclose her adultery prior to execution of a separation agreement constituted fraud in the inducement justifying cancellation of the agreement. We do not agree with Gerald's argument or with the reasoning of the New Jersey court.

Rather, we agree with Judith that a party is not entitled to rescind a separation agreement for the other's concealment of material facts where the confidential relationship between husband and wife has been severed and the parties are dealing at

arm's length. "Where a spouse employs an attorney to negotiate an agreement with the other spouse, the confidential relationship between the spouses generally is deemed to have terminated." A. Lindey, Separation Agreements and Ante-nuptial Contracts § 3, at 3-22 (1985). If a husband and wife separate and employ attorneys to negotiate an agreement in settlement of their property rights, they become adversaries and their former fiduciary or confidential relationship ends. *Id.*; *see Collins* v. *Collins*, 48 Cal. 2d 325, 331, 309 P.2d 420, 422 (1957); *Le Bert-Francis* v. *Le Bert-Francis*, 194 A.2d 662, 663 (D.C. App. 1963); *Fuller* v. *Fuller*, 68 So. 2d 177, 178 (Fla. 1953); *Craft* v. *Craft*, 478 So. 2d 258, 262-63 (Miss. 1985); *Blair* v. *Blair*, 140 Mont. 278, 282, 370 P.2d 873, 875 (1962); *Applebaum* v. *Applebaum*, 93 Nev. 382, 384-85, 566 P.2d 85, 87 (1977); *Joyner* v. *Joyner*, 264 N.C. 27, 32, 140 S.E.2d 714, 719 (1965).

Most cases addressing the question whether one spouse has fraudulently induced the other to enter into a property settlement or separation agreement have involved an alleged failure of the spouse to make full disclosure of financial resources. *See, e.g.*, *Rouse* v. *Rouse*, 212 So. 2d 650, 651 (Fla. Dist. Ct. App. 1968) (where husband did not make proper disclosure of his assets, separation agreement providing for inequitable and inadequate alimony and child support was set aside); *Hager* v. *Hager*, 6 Mass. App. 903, 903, 378 N.E.2d 459, 460 (1978) (evidence warranted finding that husband, in negotiating a support agreement, substantially misrepresented his annual income and the value of stock he owned, and support agreement was set aside for his fraudulent deception); *Craft*, 478 So. 2d at 262-63 (wife's allegation that she was induced to sign agreement by false and fraudulent representations of husband's financial condition was meritless; no confidential relationship existed because the parties were adversaries, were each represented by counsel, and were dealing at arm's length); *Riemer* v. *Riemer*, 31 A.D.2d 482, 485, 299 N.Y.S.2d 318, 321-22 (1969) (husband's failure to disclose financial circumstances was not sufficient to void separation agreement where agreement was fair on its face and both parties were represented by counsel during negotiations), *aff'd without opinion*, 31 N.Y.2d 881, 340 N.Y.S.2d 185, 292 N.E.2d 320 (1972).

At least one other court, however, has addressed the issue whether a spouse, by failing to disclose marital infidelity, violated the confidential relationship and fraudulently induced the other to

agree to a settlement without full knowledge of the circumstances and the rights of the parties. *See Winborne v. Winborne*, 41 N.C. App. 756, 759, 255 S.E.2d 640, 643 (1979). In *Winborne*, the appellate court relied on the wife's representation by an attorney in the negotiations to find the confidential relationship between the parties had ended and the husband had no duty to disclose an alleged adulterous relationship.

■ Under our view of the case, Gerald had no right to rescind the agreement. Judith and Gerald had separated and stood as adversaries. Each employed independent legal counsel. Gerald's attorney drafted a property settlement agreement, but it was rejected by Judith. Negotiations followed, and the parties ultimately reached an agreement. We hold that Judith and Gerald were dealing at arm's length. We also hold that in a negotiated settlement of a marital dispute, where the parties are adversaries and the negotitions are at arm's length, whether or not the parties are represented by independent counsel, there is no duty on the parties to disclose infidelity; rather, the duty rests on each negotiating party to discover such facts as are relevant to the dispute.

■ We hold, therefore, that the provisions of the separation agreement are enforceable by the parties. The agreement contained no express warranty of marital fidelity, and no such warranty of purity is implied by its terms. Had Gerald wanted his financial obligations under the agreement to end upon discovery of prior marital misconduct by Judith, he could have insisted upon inclusion of such a condition in the contract. *Cf. Gloth v. Gloth*, 154 Va. 511, 555, 153 S.E. 879, 893 (1930) (condition making contract voidable by husband upon subsequent adultery by wife not implied).

We will reverse the judgment of the trial court and remand the case for a determination of amounts payable to Judith under the separation agreement.

*Reversed and remanded.*