## Alexandria

HENRY REITER WEBB, JR.

v.

MICHAELA CULLEN WEBB

No. 0137-92-4

Decided June 8, 1993

488

Counsel

Arlene Lyles Pripeton (Emilia Castillo, on briefs), for appellant.

Edward J. Walinsky (Melanie C. Eyre; Law Offices of Edward J. Walinsky, on brief), for appellee.

Opinion

**FITZPATRICK, J.**—In this divorce case, the trial court set aside the parties' property settlement agreement as having been procured by fraud and for being unconscionable. On appeal, Henry Reiter Webb, Jr. (husband) contends that the trial court erred in voiding the agreement because (1) the evidence was insufficient to prove fraud or unconscionability, and (2) that even if the agreement was voidable, his partial performance prevents rescission of the remaining executory obligations. We disagree and affirm the trial court.*

## BACKGROUND

The parties were married in 1975 and separated on October 15, 1988. It was a second marriage for both, and each had children from their previous marriages. Husband was an executive with the federal government until his retirement in 1981. He then worked as a consultant and, thereafter, began actively practicing law with a Virginia law firm prior to the parties' separation. He currently receives his government pension and a salary from his law firm of approximately $52,000 per year. Michaela Cullen Webb (wife) worked part-time as a fashion consultant for minimal income. Wife had continuing health problems throughout the marriage. At the time of the separation she had undergone surgery for colitis and had developed psychological problems. She was taking medication and had consulted a psychologist for stress caused by her health problems and by her husband's alleged excessive drinking.

---

* The issues on appeal were originally tried by the Honorable Marcus D. Williams in October 1990. At that hearing, Judge Williams set aside the parties' property settlement agreement. Appellant's previous appeal of that interlocutory ruling was dismissed by a panel of this Court as premature. *See Webb v. Webb*, 13 Va. App. 681, 414 S.E.2d 612 (1992). The parties are now divorced and, therefore, appellant renews his appeal of these issues.

In the summer and fall of 1988, while still living together, the parties began to negotiate a property settlement agreement. Husband drafted the agreement and had it signed in his law office shortly after their actual separation. He discouraged his wife from seeking separate legal counsel and when she mentioned seeing another lawyer, he asked her why she felt she needed further "advisement." He also continued to give her legal advice on other aspects of their divorce.

At the time of the separation, the parties had assets consisting of (1) the marital home in McLean, Virginia with an equity of $245,500; (2) three automobiles titled in wife's name valued at $18,683.33 and one automobile in husband's name with a negative value; (3) furniture and household appliances valued at $15,000; (4) two Individual Retirement Accounts, one in each party's name, in the amount of $18,000; (5) a Keogh account valued at $26,556 in husband's name; (6) a vacation time-share in Massanutten Village valued at $6,000; and (7) the marital share of husband's pension valued at approximately $77,346.

The parties' agreement disclosed in general terms the existence of "pension rights or plans," but did not identify the exact plans referred to nor did it specify the respective values of these plans. Paragraph 11 of the agreement provides:

11. *Pensions.* After full disclosure of the nature and extent of the vested pension rights or plans (referred to herein as "Plans") of each of the parties and acknowledgement by the parties that the present value of such Plans are marital property rights subject to division herein, the parties have, in this Agreement, adjusted the division of their other marital properties, their individual assumptions of marital debts or both, to take into account the value(s) of such pension rights; and, therefore, each of the parties hereby releases and waives any claim he or she may have in any Plans titled in the name of the other party or held for his or her benefit; and each party shall have full and absolute title to, or beneficial interest in, any such Plans now titled in his or her name, or held for his or her benefit, free from any claim of the other party now and forever.

In making such releases and waivers, both parties are aware that Wife has a vested survivorship annuity interest in the civil service annuity of Husband, and that, by operation of law, such vested survivorship annuity interest can be terminated only by divorce of the parties or the death of Wife.

In October 1989, husband filed a bill of complaint for divorce alleging separation for more than six months and the existence of a valid property settlement agreement. *See* Code § 20-91(9)(a). Wife filed a cross-bill with a prayer for equitable distribution and contested the validity of the property settlement agreement. The case was referred to a commissioner in chancery for a hearing on the grounds of divorce. He recommended that the parties be granted a divorce based on separation for six months and the existence of a valid property settlement agreement. Wife excepted to the finding of validity of the property settlement.

The trial judge held a two-day *ore tenus* hearing limited solely to the issue of the validity of the agreement. At the conclusion of the hearing, the trial judge found, *inter alia*, that: (1) the parties continued to cohabit while negotiating the agreement; (2) wife relied on her husband "to do the right thing with regard to the disposition of their property"; (3) husband discouraged his wife from seeking counsel "at a critical juncture"; (4) husband, who is an attorney versed in uncontested divorce matters and property settlement agreements and who has superior knowledge of financial matters, was the party throughout the marriage who handled all the major financial transactions and, thus, he was in a far superior position to understand the ramifications of the agreement; and (5) wife suffered from ill emotional and physical health. Based on these findings of fact, the trial judge concluded that a special relationship existed between the parties that imposed a fiduciary duty upon them in their inter-marital dealings.

The trial court then found, contrary to the stated terms of the agreement, that there was not "full disclosure" and that husband breached his fiduciary duty when, acting as both a party and legal advisor, he drafted the agreement and failed to disclose to his wife the value of his pension and Keogh plans. In addition, the trial court found that, based on the totality of the circumstances, the agreement was procured by constructive fraud and was unconscionable in its application. Accordingly, the trial judge set aside the agreement.

## CONSTRUCTIVE FRAUD

Husband contends that as a matter of law wife failed to prove that he committed fraud in procuring the parties' separation agreement. In addition, assuming *arguendo* that there was evidence of fraud, husband asserts that wife never relied on any of his actions and, therefore, her allegation of constructive fraud must fail.

■ "[M]arital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain." *Cooley v. Cooley*, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980) (citation omitted); *Derby v. Derby*, 8 Va. App. 19, 25, 378 S.E.2d 74, 77 (1989). Therefore, in this case, wife "had the burden at trial to prove by clear and convincing evidence the grounds alleged to void or rescind the agreement." *Drewry v. Drewry*, 8 Va. App. 460, 463, 383 S.E.2d 12, 12 (1989). On appeal, we review the evidence in the light most favorable to the wife as the prevailing party below and determine whether that evidence established as a matter of law any of the grounds she relied upon to vitiate the agreement. *Id.* at 463, 383 S.E.2d at 12-13.

■ Constructive fraud is a " '[b]reach of legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others or violate confidence.' " *Wells v. Weston*, 229 Va. 72, 77, 326 S.E.2d 672, 675-76 (1985) (quoting *Nuckols v. Nuckols*, 228 Va. 25, 38, 320 S.E.2d 734, 741 (1984)). Furthermore, "[t]he duty by which conduct is measured to determine fraud is established by the relationship and circumstances which exist between parties." *Drewry*, 8 Va. App. at 469, 383 S.E.2d at 16.

■ "[T]o establish constructive fraud one must prove the following by clear, cogent and convincing evidence: that there was a material false representation, that the hearer believed it to be true, that it was meant to be acted on, that it was acted on, and that damage was sustained." *Nationwide Ins. Co. v. Patterson*, 229 Va. 627, 629, 331 S.E.2d 490, 492 (1985).

■ Initially, we examine whether there was sufficient evidence at trial to support the trial judge's determination that there was a "special relationship" between the parties that imposed upon the husband a continuing duty of trust in the negotiation and preparation of the settlement agreement. The existence of a "special relationship" depends on the specific facts of each case. Generally, if the parties have separated, employed independent counsel and are then negotiating a property settlement agreement, it is an arms length transaction and their former fiduciary relationship is deemed to have ended. *Barnes v. Barnes*, 231 Va. 39, 42, 340 S.E.2d 803, 804 (1986).

In the case at bar, the trial judge made several findings of fact that resolved any disputed testimony in favor of the wife. Much of the negotiations for the separation agreement transpired while the parties were still living together in the same house and sleeping in the same room. The agreement, however, was signed in husband's law office a few days after he left the marital home. Husband handled all major financial transactions during the marriage and wife "relied on [husband] to do the right thing with regard to the disposition of their property." Standing alone, this evidence might be insufficient to meet the burden of proving by clear and convincing evidence that the agreement was procured by constructive fraud.

In addition, however, the evidence established that husband is a licensed Virginia attorney, that he drafted the agreement, gave his wife legal advice on other aspects of their divorce as well as property matters, and discouraged his wife from seeking independent legal counsel "at a critical juncture" when she was in need of such independent counsel. When husband advised wife on legal matters he acted as an attorney as well as a party. Husband had "superior knowledge of financial affairs" that put him in a "greatly superior" position during the negotiation of the agreement. In addition, the trial judge found "that there was non-disclosure [by husband] of the various pension assets" that was deemed a "material omission of fact that [wife] would need to have relied upon in order to make a knowing and voluntary agreement." Husband's position as attorney and advisor placed him in the category of one who continues in a "special relationship" with his wife. As such, husband had an affirmative duty to make a full disclosure to wife as to the value of the Keogh account ($26,556) and pension ($77,346) and to inform her that she was entitled to have her rights and equities in these assets determined in accordance with Code § 20-107.3.

Husband relies upon our holding in *Drewry* as controlling the outcome here. However, we find the facts of this case to be clearly distinguishable from those in *Drewry*. The parties in that case reached an agreement and Mr. Drewry, with the knowledge of his wife, consulted an attorney who formalized the document. The attorney met with both parties and explicitly stated "he could not represent either [party] in negotiating the agreement or in the divorce proceeding." *Drewry*, 8 Va. App. at 464, 383 S.E.2d at 13. The trial court specifically found that Mr. Drewry had never discouraged his wife from seeking independent counsel, and that he had in no way concealed material facts or

made any misrepresentation that affected the terms of the agreement. Those facts are in stark contrast to the evidence presented here.

Husband asserts that no substantive difference exists between the situation where a spouse employs an independent attorney to draft an agreement and a case where one party who is an attorney drafts the agreement himself or herself. This is an issue of first impression in Virginia. Husband relies on several cases from other jurisdictions in support of his claim that no "special relationship" existed between the parties. *See Jeffries v. Jeffries*, 434 N.W.2d 585 (S.D. 1989); *Blum v. Blum*, 59 Md. App. 584, 477 A.2d 289 (1984); *Avriett v. Avriett*, 88 N.C. App. 506, 363 S.E.2d 875, *aff'd*, 322 N.C. 468, 368 S.E.2d 377 (1988); *Collins v. Collins*, 48 Cal. 2d 325, 309 P.2d 420 (1957); *Fuller v. Fuller*, 68 So. 2d 177 (Fla. 1953); *Riemer v. Riemer*, 31 A.D.2d 482, 299 N.Y.S.2d 318 (1969), *aff'd*, 31 N.Y.2d 881, 340 N.Y.S.2d 185, 292 N.E.2d 320 (1972). However, in none of these cases was the party challenging the existence of a "special relationship" also acting as an attorney in the case. Furthermore, in the cases cited, the party seeking to prove that a "special relationship" existed was either represented by counsel, informed of, but refused to seek independent counsel, or drafted the agreement. In contrast, because of the risks involved when the party negotiating and drafting the agreement is an attorney and proceeds to give legal advice, despite the inherent conflict involved, trial courts should carefully scrutinize such agreements. *See generally* Virginia Code of Professional Responsibility DR 5-101; EC 5-2; and DR 7-103; LE Op. Nos. 227, 403, 452 and 1015.

Husband asserts that even if the trial court was correct in finding the requisite special relationship and that he had made material misrepresentations during the negotiation process, wife failed to prove any reliance on such misrepresentations. *See Brame v. Guarantee Fin. Co.*, 139 Va. 394, 408, 124 S.E. 477, 481 (1924). We disagree. The trial court found that husband, acting as both a party and counsel, made a material omission of fact by failing to disclose the value of his pension assets and that wife needed such information in order to make a knowing and voluntary agreement.

Viewing the evidence in the light most favorable to the wife, we find that the trial judge's finding that the wife relied upon the husband's misrepresentations is amply supported by the evidence. The husband admitted that he advised his wife on Virginia divorce and equitable distribution law and stated that he told her under "Virginia law in the absence of default [sic] basis the Court is going to start

[dividing the marital property] on a 50/50 assumption." Not only is this statement of law incorrect, but it misled wife into signing the agreement to her detriment. In addition, husband failed to disclose the value of "various pension assets." Husband compounded these errors by discouraging his wife from seeking independent counsel. Thus, the trial judge properly found a material false representation that husband expected wife to act upon, that she believed to be true, and that she acted on to her detriment. *See Nationwide Ins. Co.*, 229 Va. at 629, 331 S.E.2d at 492. Accordingly, we hold that on this record wife met her burden of proving constructive fraud by clear and convincing evidence. *See Winn v. Aleda Constr. Co.*, 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984).

## EQUITABLE ESTOPPEL

Next husband contends that even if the trial judge properly found that the agreement was procured by fraud, wife is estopped from repudiating the agreement because of husband's partial performance under the terms of the agreement, and the fact that she received and accepted a benefit from that part performance. Husband argues that a condition precedent to the wife's right to rescission is the restoration of the status quo ante and that this cannot be accomplished because he has already transferred his interest in the marital home to his wife and her brother. *Blum*, 59 Md. App. at 594, 477 A.2d at 294 (citing *Gaver v. Gaver*, 176 Md. 171, 4 A.2d 132 (1939)).

Wife asserts that Rule 5A:18 bars husband from arguing to this Court that she is equitably estopped from seeking rescission of their agreement. Wife contends that this issue was not properly raised until after the trial judge's ruling, to which ruling husband's counsel agreed. However, this issue was fully argued to the trial judge at the hearing on the husband's motion to reconsider and, therefore, we address the merits of husband's argument.

Equitable estoppel is not available to husband in this case. Estoppel is the doctrine by which a "party is prevented by his own acts from claiming a right to [the] detriment of [the] other party who was entitled to rely on such conduct and has acted accordingly." *Black's Law Dictionary* 551 (6th ed. 1990); *see also American Mut. Liab. Ins. Co. v. Hamilton*, 145 Va. 391, 407, 135 S.E. 21, 25 (1926). "The elements necessary to establish equitable estoppel are (1) a representation, (2) reliance, (3) change of position, and (4) detriment, and the party who relies upon estoppel must prove each element by clear,

precise, and unequivocal evidence. Because the doctrine of estoppel prevents the showing of the truth, it is applied rarely and only from necessity." *Princess Anne Hills v. Susan Constant Real Estate*, 243 Va. 53, 59, 413 S.E.2d 599, 603 (1992) (citations omitted).

In the case at bar, it was husband whose fraud induced this contract. It is he who is barred by "unclean hands" from receiving equitable relief. Husband's actions caused his wife to enter into the agreement through fraud and he cannot now complain that he has been forced to perform to his detriment. *See Southeast Lumber Export Co. v. Friend*, 158 Va. 863, 869, 164 S.E. 372, 374 (1932). Generally, to warrant rescission of the contract, "the court must be able substantially to restore the parties to the position they occupied before entering into the contract, but, where, on account of the act of the adverse party, complete restitution cannot be had, rescission will not be denied and the court will, so far as practicable, require the party profiting by the fraud to surrender the benefit he has received in the transaction." *Millboro Lumber Co. v. Augusta Wood Prods. Corp.*, 140 Va. 409, 421, 125 S.E. 306, 310 (1924) (citations omitted); *see also Long v. Harrison*, 134 Va. 424, 447, 114 S.E. 656, 663 (1922). "It is immaterial that the *status quo* cannot be literally restored." *Millboro*, 140 Va. at 421, 125 S.E. at 310. The general rule of restoration is not strictly applied in the case of fraud, because it would become a loophole to escape the consequences of a fraudulent act. "Equity makes a reasonable application of the rule by requiring whatever fair dealing requires under all the circumstances of the particular case, but it does not permit the rule [of restoration] to become a shield for wrongdoing." *Wald's Pollock on Contracts*, 713.38 (1906) (citing *Butler v. Prentiss*, 158 N.Y. 49, 52 N.E. 652 (1899)); *see also Thackrah v. Haas*, 119 U.S. 499 (1886).

Where the fraud justifying rescission of a contract is merely constructive, the parties are entitled to be placed in the status quo ante. *Payne v. Simmons*, 232 Va. 379, 385, 350 S.E.2d 637, 641 (1986). This rule, "however, is not inflexible, and is largely influenced by the facts of the particular case." *Jackson v. Counts*, 106 Va. 7, 12-13, 54 S.E. 870, 872 (1906). "Absolute and literal restoration is not required. Restoration that is reasonably possible and demanded by the equities of the case is enough." *Edmunds v. Chandler*, 203 Va. 772, 779, 127 S.E.2d 73, 78 (1962).

The principle upon which the [restoration] rule rests is that, where the parties cannot be placed in the [status] quo, a rescission by one party would give [her] an unfair advantage over the other. *But this does not apply where the inability to place a party in his former position is caused by his own fraud.* Hence, where the right to rescind springs from subsequently discovered fraud, the defrauded party does not lose [her] right to rescind because the contract has been partly executed, and the parties cannot be fully restored to their former position. . . . [If rescission] would be in furtherance of justice, a rescission may still be had, and the equities of the parties arising out of the rescission enforced, although they cannot be in all respects fully restored to their former condition.

*McCarty v. New York Life Ins. Co.*, 74 Minn. 530, 537, 77 N.W. 426, 428 (1898) (citations omitted) (emphasis added). In the context of constructive fraud, we are persuaded that the equitable rule requiring restoration of the status quo ante is limited by the reason for the rule and, thus, its application turns on the particular facts of each case.

After finding constructive fraud, the trial judge recognized that there was some difficulty in restoring the parties to the status quo ante because of husband's partial performance. The trial judge addressed these concerns by ruling that the equitable distribution hearing could serve to remedy any interest lost by the parties due to the invalidation of the agreement. Any monetary loss could be adjusted through an equitable distribution award. Husband initially agreed to that remedy. Given the nature of the relationship between the parties and husband's role in procuring the agreement, the trial judge restored the parties to the extent "reasonably possible and demanded by the equities of the case." *Edmunds*, 203 Va. at 779, 127 S.E.2d at 78. Because we find that the trial court correctly set aside the agreement based on fraud, we need not address the wife's additional ground of unconscionability in application. Accordingly, we affirm the judgment.

*Affirmed.*

Baker, J., and Coleman, J., concurred.