COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Moon, Judges Coleman and Fitzpatrick


VICKIE LYNN FIELDS

v.      Record No. 0239-95-3        MEMORANDUM OPINION* BY
                                   JUDGE JOHANNA L. FITZPATRICK
DAVID CARL FIELDS                      FEBRUARY 27, 1996


                FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
                    Charles B. Flannagan, II, Judge

                Frederick W. Adkins (Cline, Adkins, Cline &
                Rogers, on brief), for appellant.

                Dennis E. Jones, for appellee.


     In this domestic appeal, the sole issue is whether the trial

court erred in finding the parties' property settlement agreement

to be valid.  We hold that wife failed to prove fraud by clear

and convincing evidence and affirm the trial court.

     Vickie Lynn Fields (wife) and David Carl Fields (husband)

were married on June 6, 1980 and had one child born of the

marriage, Justin Heath.  Each had been divorced before and had

children from their previous marriages.  At the time of the

marriage, both parties worked at Pittston Coal Group (Pittston)

in Lebanon, Virginia, wife as a keypunch operator and husband as

an accountant.  At the time of the hearing, husband was an

assistant vice-president and comptroller of Pittston, and had

also held the position of financial analyst during his tenure

with the company.  Wife left Pittston when the parties' son was

     *Pursuant to Code § 17.116.010 this opinion is not
designated for publication.

born and works at Teague Associates as an executive secretary. During the marriage, husband handled the parties' financial affairs, but wife had access to their financial documents, which were kept at the marital residence.

The parties began having marital difficulties during December 1992. In the spring of 1993, the parties discussed entering into a property settlement agreement and agreed that husband would prepare a draft agreement. Husband compiled the agreement using Pittston's law library and blank forms obtained from an attorney. Neither party received legal advice. On May 8, 1993, husband brought the draft agreement home and asked wife to sign it. Wife testified that she did not understand some of the clauses and specifically asked husband about the child support provisions, but did not ask him about other parts of the agreement. The evidence established that husband would have told wife the value of individual assets or any other information if she had asked. Husband answered her questions about child support, but did not give her legal advice nor discourage her from seeking advice from an attorney. Wife signed the agreement that night without consulting an attorney.

> Paragraph 11(i) of the agreement provides as follows:
>      All funds of the husband in the savings
>      investment plan which the husband presently
>      has with his employer and all the husband's
>      right, title and interest in and to any
>      vested retirement plans of the husband with
>      his employer shall remain the sole and
>      separate property of the husband and the wife
>      hereby agrees to relinquish all right, title
>      and interest which she may have in and to any

2

of the said funds.

Similarly, under the agreement, husband agrees to relinquish any rights in wife's pension:

> All funds of the wife in the savings
> investment plan which the wife presently has
> with her employer and all the wife's right,
> title and interest in and to any vested
> retirement plans of the wife with her
> employer shall remain the sole and separate
> property of the wife and the husband hereby
> agrees to relinquish all right, title and
> interest which he may have in and to any of
> the said funds.

Paragraph 11(i) does not disclose the specific value of either party's pension assets. The only asset of the parties not addressed in this agreement is $13,049 of United States savings bonds that husband purchased during the marriage. Husband's proposed findings of fact indicated that the bonds were worth $13,049; that the marital portion of his savings investment plan was $59,357 after taxes and penalty for early withdrawal; and that the present value of the marital portion of his retirement plan was $25,382.

After the parties signed the agreement, husband continued to live at the marital residence until August 1, 1993. The parties separated on that date, and wife filed a bill of complaint for divorce on November 17, 1993, moving to set aside the agreement of May 8, 1993 as having been "procured by fraud, intimidation and deceit." The trial court held a hearing on wife's motion to set aside the agreement on December 15, 1993. In the January 13, 1995 final decree, the court found as follows:

3

> UPON FURTHER CONSIDERATION of the physical and mental condition of the parties at the date and time of the entry of the Agreement of May 8, 1993, evidence and arguments of counsel; that there exists no gross disparity in the economic value of the portion of the marital estate that each party is to receive that shocks the [conscience] of the Court; it is therefore
>
> ADJUDGED, ORDERED and DECREED that the Agreement between the parties dated May 8, 1993 . . . is a <u>valid and binding contract between the parties</u>, however, the Court declines to ratify, confirm and incorporate into this Decree by reference the Agreement between the parties dated May 8, 1993.

(Emphasis added.) Although the court made no specific findings as to the value of the parties' property, it found that the terms of the agreement were not unconscionable.

Wife argues on appeal that the trial court erred in validating the agreement because husband acted fraudulently by failing to disclose the value of his pension assets, and the existence and value of the savings bonds. We disagree.

"'[M]arital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain.'" <u>Webb v. Webb</u>, 16 Va. App. 486, 491, 431 S.E.2d 55, 59 (1993) (quoting <u>Cooley v. Cooley</u>, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980)). "[T]he one contesting the contract must prove the allegations by clear and convincing evidence." <u>Derby v. Derby</u>, 8 Va. App. 19, 26, 378 S.E.2d 74, 77 (1989). "On appeal we review the evidence in the light most favorable to the

4

prevailing party and determine whether that evidence established as a matter of law any of the grounds relied upon to vitiate the agreement and decree." Drewry v. Drewry, 8 Va. App. 460, 463, 383 S.E.2d 12, 12-13 (1989).

Constructive fraud is a "'breach of legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others or violate confidence.'" Webb, 16 Va. App. at 491, 431 S.E.2d at 59 (quoting Wells v. Weston, 229 Va. 72, 77, 326 S.E.2d 672, 675-76 (1985)). "'[T]o establish constructive fraud one must prove the following by clear, cogent and convincing evidence: that there was a material false representation, that the hearer believed it to be true, that it was meant to be acted on, that it was acted on, and that damage was sustained." Webb, 16 Va. App. at 491, 431 S.E.2d at 59 (quoting Nationwide Ins. Co. v. Patterson, 229 Va. 627, 629, 331 S.E.2d 490, 492 (1985)).

Assuming without deciding that under the facts of this case husband had a duty to disclose, and viewing the evidence in the light most favorable to husband, the prevailing party, we hold that wife failed to prove fraud by clear and convincing evidence. The agreement included a provision that dealt with each party's savings investment and retirement plans. Wife was fully aware that husband had a savings investment plan and a retirement plan. Husband's failure to list the specific values of his savings investment and retirement plans did not amount to a material

5

misrepresentation of value. The agreement does not contain the values of several assets, including wife's savings investment plan and pension plan. Moreover, the evidence established that husband did not refuse to disclose nor misrepresented the values and would have disclosed the value of any asset to wife had she asked. Furthermore, wife had access to the financial documents of the parties. Thus, the trial court did not err in validating the parties' agreement.

The instant case is clearly distinguishable from Webb. In Webb, the husband, who also handled the parties' financial affairs, drafted the property settlement agreement and failed to disclose the value of his pension. However, we determined that the husband was in a "special relationship" with his wife primarily because he was an experienced attorney who gave his wife legal advice regarding the agreement and other aspects of the divorce and actively discouraged her from seeking legal advice from independent counsel. 16 Va. App. at 492, 431 S.E.2d at 60. None of these factors exists in this case. Although husband was more knowledgeable about the parties' financial affairs, unlike the husband in Webb, he was not an attorney acting as an attorney in the negotiation and drafting of the agreement.

Next, wife argues that, if not fraudulently procured, the agreement was unconscionable. "When a court considers whether a contract is unconscionable, adequacy of price or quality of value

6

transferred in the contract is of initial concern." Drewry, 8 Va. App. at 472, 383 S.E.2d at 18. An agreement's terms are unconscionable if there is "gross disparity in the value exchanged." Derby, 8 Va. App. at 28, 378 S.E.2d at 79.

Under the agreement in this case, wife receives the marital home, a car, a boat, and child support of $600 per month in exchange for husband receiving two empty lots and two cars. Both parties waived spousal support. In Paragraph 10 of the agreement, husband agrees to pay the mortgage and other maintenance expenses on the marital home, at least until the parties' son becomes emancipated and subject to other contingencies. The agreement equally divides the parties' personal property, a joint savings account, and an individual retirement account. The agreement also provides for both parties to receive their own savings investment plans, pension plans, and individual bank accounts. On these facts, we cannot say that the trial court erred in finding that "there exists no gross disparity in the economic value of the portion of the marital estate that each party is to receive that shocks the [conscience] of the Court."

Finally, we hold that husband's omission of the savings bonds worth $13,049 from the agreement did not constitute constructive fraud. The record does not establish why the savings bonds were left out of the agreement, and the trial judge made no finding regarding this asset. Because no evidence

7

explained the absence of a provision dealing with the bonds, the proof failed to establish that the omission was a "material false representation."  Thus, husband's failure to disclose the bonds, standing alone, is not sufficient to void the agreement.

Accordingly, the decision of the trial court is affirmed.

<u>Affirmed</u>.