COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Beales and McCullough
Argued at Alexandria, Virginia


SHEILA M. VELEZ
                                                  MEMORANDUM OPINION* BY
v.        Record No. 0899-14-4                    JUDGE RANDOLPH A. BEALES
                                                  MARCH 3, 2015
CARLOS M. LIZARDI


             FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                       David S. Schell, Judge[1]

              Katherine Martell (Meredith M. Ralls; FirstPoint Law Group, P.C.,
              on brief), for appellant.

              Christopher Wm. Shinstock (Kyle F. Bartol; Cottrell Fletcher
              Schinstock Bartol & Cottrell, P.C., on brief), for appellee.


        On April 16, 2014, the circuit court entered a final decree of divorce between Sheila M.

Velez (wife) and Carlos M. Lizardi (husband), which incorporated the parties' December 2010

property settlement agreement (PSA).  On appeal, wife argues that that the PSA is invalid and

unenforceable on the ground that husband committed constructive fraud and on the ground that the

PSA's terms are unconscionable.  Wife also challenges the circuit court's decision to award

husband $23,580.90 of his attorneys' fees and costs under the PSA's enforcement provision.  For

the following reasons, we affirm the circuit court.  In addition, given the terms of the PSA, we must

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] Judge Schell entered the final divorce decree in this case, which incorporated his ruling
with respect to an award of attorneys' fees and costs to husband.  Judge Michael F. Devine
presided at two earlier hearings that are pertinent to this appeal in which he addressed whether
the parties' property settlement agreement was procured through constructive fraud and was
unconscionable.

remand the matter for a determination of husband's reasonable attorneys' fees and costs that he incurred in his successful litigation of this appeal.

I. BACKGROUND

Under settled principles of appellate review, we view the evidence in the light most favorable to husband, as the party prevailing below, Chretien v. Chretien, 53 Va. App. 200, 202, 670 S.E.2d 45, 46 (2008), and we grant to husband "all reasonable inferences fairly deducible therefrom." Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). In this case, the parties were married in 1986, and they separated in July 2005. After initially residing in the basement of the parties' marital home immediately following the parties' separation, husband began living in another residence later in 2005. However, husband continued making payments toward the mortgage of the marital home. The record establishes that the parties had an understanding following the separation that husband would pay wife $5,000 per month. It is undisputed that $1,000 of this amount was intended to be child support for the parties' youngest son and $1,500 was intended to be spousal support to wife. The record is in conflict whether husband paid wife the remaining $2,500 for the sole purpose of making the monthly mortgage payment on the marital home (which wife claimed at trial) – or whether husband instead expected wife to pay the mortgage and then wife was free to use the remainder of that $2,500 as she pleased (which husband claimed at trial).

According to the record on appeal, the parties each retained counsel after they separated and attempted to negotiate a property settlement agreement. The parties agreed at trial that they did not come to an agreement in 2007 and 2008 because wife did not agree with the amount of spousal support and the amount of husband's military retirement benefits[2] that husband proposed that he pay

---

[2] Husband retired from the military after the parties separated and began working in the private sector. At the December 20, 2012 hearing in the circuit court, the parties were questioned about the details of a joint tax return for 2009 that was filed in 2010. Husband

her. The record also reflects that it was very important to wife that she remain in the marital home. Although the negotiations in 2007 and 2008 were heated and the parties never contemplated reconciling, the parties nevertheless interacted well enough together that wife was given access to husband's separate checkbook to ensure that his bills were paid on time when work required him to be overseas. Husband continued to pay wife $5,000 per month for several years after the parties separated – and, during that time, no divorce proceedings were initiated and no *pendente lite* order was entered.

On December 24, 2010, husband attended a Christmas Eve dinner at the marital residence at wife's invitation and with many family members in attendance. After dinner had concluded, husband spoke to wife in private and asked her to sign a document. Wife quickly scanned – but did not read – the document. She testified at trial that husband had told her that the document related to his attempts to purchase a house in Maryland and that the bankers required that her signature be on the document. The circuit court accepted wife's testimony on this point, although it rejected her testimony that the document was only two pages rather than seven pages long. The record on appeal establishes that this seven-page document is entitled "Property Settlement and Separation Agreement" and that wife signed the document on December 24, 2010. This document is the PSA that husband drafted on his own and that husband later presented to the circuit court for incorporation into the parties' divorce decree.

Under the terms of the PSA that wife signed on December 24, 2010, wife receives sole title to the parties' marital residence (and the residence's furnishings) as well as the parties' Mercedes Benz automobile and holds husband harmless for the debts on those assets. Wife also receives $1,000 in monthly child support for the parties' youngest son and an additional $1,500 in monthly

acknowledged receiving approximately $138,000 in wages, as well as about $40,000 in military retirement benefits, while wife testified that she earned just over $21,000 in wages and tips as a hairdresser. In addition, wife received a Social Security benefit on behalf of the parties' youngest child, who has autism.

spousal support. Furthermore, the PSA essentially provides that the $1,500 monthly spousal support award terminates after five years – when wife then begins receiving $1,500 per month from husband's military retirement benefits. In other words, the PSA states that wife cannot receive $1,500 in monthly spousal support *and* $1,500 in monthly military retirement benefits concurrently. Moreover, the PSA provides that the parties agree that the PSA is a contract between the parties, that they agree to incorporate the PSA into a future divorce decree, and that neither party will "oppose such incorporation" into a divorce decree.

On April 19, 2012, husband filed a divorce complaint in circuit court. During the course of the divorce litigation, husband moved to incorporate the PSA into the circuit court's final divorce decree. Wife opposed incorporating the PSA into a divorce decree. She argued that the PSA was invalid and unenforceable on the ground that husband committed constructive fraud and on the ground that the PSA's terms were unconscionable. The circuit court heard testimony on November 8, 2012 and December 20, 2012 – when wife and husband both testified. While the circuit court found that husband misrepresented the purpose of the document that he presented to wife at the Christmas Eve dinner on December 24, 2010 and that wife relied on this misrepresentation, the circuit court ultimately concluded that constructive fraud had not been proven by clear and convincing evidence because the evidence supported a finding that the parties were operating "at arm's length" at that time. In addition, the circuit court found that wife failed to meet the burden of showing that the PSA was unconscionable. The circuit court noted that the PSA's terms were favorable to husband and unfavorable to wife – but found that there was not a "gross disparity" in those terms, as was required to prove that the PSA was unconscionable. Therefore, on January 22, 2013, the circuit court entered written orders denying wife's motion challenging the PSA's validity and granting husband's motion to incorporate the PSA into the final divorce decree.

Subsequently, on February 26, 2014, the circuit court heard evidence and argument addressing whether husband was entitled to an award of attorneys' fees and costs under the PSA's enforcement provision. The April 16, 2014 final divorce decree reflects that the circuit court awarded husband $23,580.90 in attorneys' fees and costs under this provision.

## II. ANALYSIS

### A. VALIDITY OF THE PSA

In her first and second assignments of error, wife argues that the PSA signed by the parties on December 24, 2010 is invalid on the grounds (1) that it was procured through constructive fraud[3] by husband and (2) that the terms of the PSA are unconscionable. "'Marital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and such will be enforced unless their illegality is clear and certain.'" Webb v. Webb, 16 Va. App. 486, 491, 431 S.E.2d 55, 59 (1993) (quoting Cooley v. Cooley, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980)). Since wife challenged the validity of the parties' PSA in the circuit court, she assumed the burden "to prove by clear and convincing evidence the grounds alleged to void or rescind the agreement." Drewry v. Drewry, 8 Va. App. 460, 463, 383 S.E.2d 12, 12 (1989) (citing Winn v. Aleda Construction Co., 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984); Gill v. Gill, 219 Va. 1101, 1106, 254 S.E.2d 122, 125 (1979)). "Clear and convincing" evidence is "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to

---

[3] Wife has not raised a claim of actual fraud in the circuit court or on appeal. At the December 20, 2012 hearing in the circuit court, wife agreed with the circuit court that principles of constructive fraud applied to the circumstances of this case. Wife's counsel expressly agreed that wife had the burden of establishing the required "special relationship" between the parties in December 2010 in order to prevail on the claim of constructive fraud. Those principles of constructive fraud that wife's counsel agreed control the analysis of this matter are now the law of the case. See Trustees of Asbury United Methodist Church v. Taylor & Parrish, Inc., 249 Va. 144, 154, 452 S.E.2d 847, 852 (1995). Moreover, wife's first assignment of error on appeal focuses on the specific issue of whether the record contains clear and convincing evidence of the required "special relationship" between the parties as of December 2010. Our review of the first assignment of error is limited to addressing the circuit court's finding that there was not clear and convincing evidence of the required "special relationship" between the parties at that time.

the allegations sought to be established." Seemann v. Seemann, 233 Va. 290, 293 n.1, 355 S.E.2d 884, 886 n.1 (1987).

This Court has explained:

> Fraud is generally determined by reviewing the conduct of the parties in relation to their legal and equitable duties to one another; unconscionability is more concerned with the intrinsic fairness of the terms of the agreement in relation to all attendant circumstances, including the relationship and duties between the parties. A party may be free of fraud but guilty of overreaching or oppressive conduct in securing an agreement which is so patently unfair that courts of equity may refuse to enforce it.

Derby v. Derby, 8 Va. App. 19, 28, 378 S.E.2d 74, 78 (1989).

### 1. Constructive Fraud

Wife alleges in her first assignment of error that the circuit court erred when it found that "a special or confidential relationship was lacking" between wife and husband on December 24, 2010, when wife signed the PSA.[4]  Constructive fraud is a "'breach of legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others or violate confidence.'" Wells v. Weston, 229 Va. 72, 77, 326 S.E.2d 672, 675-76 (1985) (quoting Nuckols v. Nuckols, 228 Va. 25, 38, 320 S.E.2d 734, 741 (1984)); see Webb, 16 Va. App. at 491, 431 S.E.2d at 59.  Case law is clear that "'the duty by which conduct is measured to determine fraud is established by the relationship and circumstances which exist between parties." Id. (quoting Drewry, 8 Va. App. at 469, 383 S.E.2d at 16).  Furthermore, "[m]arriage is a confidential relationship of trust imposing the highest fiduciary duty upon the spouses in their intermarital dealings." Derby, 8 Va. App. at 27, 378 S.E.2d at 78.

---

[4] Wife further contends in the first assignment of error that the circuit court erred in finding that wife failed to prove constructive fraud on husband's part "even though the Circuit Court found that [wife] relied upon a materially false representation by [husband]" when she signed the PSA and their "financial lives were intertwined."

However, the Supreme Court has expressly held that "a party is not entitled to rescind a separation agreement for the other's concealment of material facts *where the confidential relationship between husband and wife has been severed and the parties are dealing at arm's length*." Barnes v. Barnes, 231 Va. 39, 41-42, 340 S.E.2d 803, 804 (1986) (emphasis added). Determining whether this special fiduciary relationship still exists between parties who have separated – or whether the special relationship has been severed – is a threshold issue in cases addressing whether a property settlement agreement is invalid due to constructive fraud. See, e.g., Webb, 16 Va. App. at 491, 431 S.E.2d at 59 ("Initially, we examine whether there was sufficient evidence at trial to support the trial judge's determination that there was a 'special relationship' between the parties that imposed upon the husband a continuing duty of trust in the negotiation and preparation of the settlement agreement."). Furthermore, "[s]uch determination depends upon the facts of each particular case." Drewry, 8 Va. App. at 470, 383 S.E.2d at 16; see also Webb, 16 Va. App. at 491, 431 S.E.2d at 59 ("The existence of a 'special relationship' depends on the specific facts of each case.").

In this case, while the circuit court agreed with wife that husband acted unfairly on December 24, 2010, the circuit court also found that wife failed to present adequate proof that there was a "special relationship" between husband and wife at that time – i.e., the threshold issue in determining whether a party can proceed with challenging a PSA on the basis that it was procured through constructive fraud.[5] See id. Simply put, the circuit court found insufficient evidence of a

---

[5] At the conclusion of the December 20, 2012 hearing, the circuit court made many findings of fact about what occurred between husband and wife at the Christmas Eve function on December 24, 2010. The circuit court found, *inter alia,* that wife did not read the document that husband presented to her because he told her that it "was only for the bank" (i.e., her signature on the document would assist husband in purchasing a home but would not affect the post-separation dealings between wife and husband), that husband made a "materially false representation" that wife believed to be true, and that "this document is not one that [wife] would have voluntarily signed if she believed it was going to affect her rights going forward." See Nationwide Ins. Co. v. Patterson, 229 Va. 627, 629, 331 S.E.2d 490, 492 (1985) (discussing the elements of constructive

special fiduciary relationship between wife and husband that could excuse wife's failure even to read the document that husband presented to her (and that she signed) on December 24, 2010.

On appeal, the issue of whether there was sufficient proof of a "special relationship" of trust between parties who are separated on the date in question is a fact-specific inquiry that must depend on the circumstances of this particular case. See Drewry, 8 Va. App. at 470, 383 S.E.2d at 16; see also Webb, 16 Va. App. at 491, 431 S.E.2d at 59. Accordingly, the circuit court's decision here may not be disturbed on appeal unless that decision was plainly wrong or without evidence to support it. See School Board of Campbell County v. Beasley, 238 Va. 44, 51, 380 S.E.2d 884, 888 (1989) ("When a case is decided by a trial court sitting without a jury, the judgment below 'shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.'" (quoting Code § 8.01-680)). Furthermore, as we are an appellate court, we are "not permitted to reweigh the evidence or to substitute [our] factual judgment for that of the circuit court." Id.

Viewing the evidence in the light most favorable to husband, as we must since he was the prevailing party below on this issue, credible evidence in the record on appeal supports the circuit court's finding that there was insufficient proof – by the required clear and convincing evidence – of the "special relationship" between husband and wife on December 24, 2010 that was necessary to support wife's allegation of constructive fraud. The circuit court found that "the relationship here between the parties was not as husband and wife" when husband asked her to sign the document on December 24, 2010. The circuit court added that the parties were "clearly separated" on December

fraud). After making these findings, however, the circuit court remarked that the "only question I think that remains is [whether] there [was] some type of ongoing relationship between these two individuals that would allow me to set it aside for purposes of constructive fraud" under binding case law from the Supreme Court and the Court of Appeals. The circuit court clearly based its ruling here on the lack of clear and convincing evidence of a "special relationship" between wife and husband on December 24, 2010 that is necessary to prove constructive fraud.

24, 2010 – and had been separated for "more than five years" at that point.  Furthermore, the circuit court found that the parties "had been in contentious discussions before" when they previously negotiated the terms of a potential PSA.  Notably, the circuit court found, "I think they *were clearly at arm's length* to the extent that there's *no special relationship* arising out of their being husband and wife."  (Emphasis added).  Therefore, the circuit court made a finding of fact that the parties were operating "at arm's length" on December 24, 2010.

Continuing with its bench ruling concerning constructive fraud, the circuit court added that the "only hint of a special relationship was the financial intertwining" that occurred to some extent between wife and husband following the separation.  The circuit court noted that the parties "continued to file joint tax returns" after their separation (through the 2009 tax year).  The circuit court also observed that "[husband] entrusted [wife] with his checkbook" when he was deployed overseas or unavailable in order to ensure that his bills were paid on time.  However, the circuit court did not give this factor much weight in the context of the totality of the circumstances of the record – remarking that "it's really [wife's] trust in [husband] that matters to me in this instance."  The circuit court explained:

> The fact that [husband] trusted [wife] I think is insufficient to create the relationship that would allow me to set aside this agreement.
>
> The testimony I had from [wife] was that she trusted in him and discussed financial matters and documents with him.  Very unspecific.  *I find that that evidence although tending to support the existence of a confidential or special relationship is insufficient because it doesn't meet the standard of clear and convincing.  I don't know the nature of the financial matters discussed.  I don't know what documents they shared.*  I don't know how close that relationship was and if he really became a financial counselor in her life.

(Emphasis added).  The circuit court then distinguished the circumstances here from those in Webb – where one of the parties was a licensed Virginia attorney, drafted the property settlement agreement, gave the other party legal advice on other aspects of their divorce as well as other

property matters, and discouraged the other party from seeking independent legal counsel "at a critical juncture" when that party was in need of such independent counsel. See Webb, 16 Va. App. at 431 S.E.2d at 60. By contrast, the circuit court concluded here that wife's testimony in this case "just doesn't meet the clear and convincing evidence standard."

The circuit court's decision must be affirmed on appeal because it was not plainly wrong or without evidence to support it. See Code § 8.01-680. The Supreme Court has stated that constructive fraud is proven by behavior that actually "violate[s] confidence" that is shared by the parties. Wells, 229 Va. at 77, 326 S.E.2d at 76. However, "[g]enerally, when spouses separate with the intention to divorce and propose to divide or settle their property interests, they have assumed adversarial roles and no longer occupy a position of trust." Drewry, 8 Va. App. at 470, 383 S.E.2d at 17. The parties here separated in May 2005 – and, therefore, had been separated *for more than five years* on December 24, 2010. It is undisputed from the record that reconciliation was not an option for the parties after they separated. They would either remain separated or eventually divorce – but they would not reconcile. They had retained attorneys at various points in the past. The parties had previously negotiated over the terms of a draft PSA on at least two occasions (in 2007 and 2008), although they never reached agreement on specific terms in the draft PSA. As the Supreme Court explained in Barnes, 231 Va. at 42, 340 S.E.2d at 804, "If a husband and wife separate and employ attorneys to negotiate an agreement in settlement of their property rights, they become adversaries and their former fiduciary or confidential relationship ends."

Even though the parties seemingly were not actually represented by counsel on December 24, 2010, that circumstance does not change our analysis. See Derby, 8 Va. App. at 27, 378 S.E.2d at 28 (citing Barnes, 231 Va. at 43, 340 S.E.2d at 805). The record establishes that the parties were still negotiating toward a potential property settlement very near that date. In fact, husband testified that the parties "started to talk" again in early December of 2010 "about reaching an agreement."

Husband added that he had even "e-mail[ed] her a version of an agreement" in early December –

the same month in which husband presented the document for wife's signature on Christmas Eve of

2010.[6]  Husband's testimony here provides additional support for the circuit court's finding that the

parties were operating "at arm's length" on December 24, 2010.  Therefore, we cannot say on

appeal that the circuit court's factual finding that the parties were operating "at arm's length" on

December 24, 2010 was plainly wrong or without evidence to support it.

In short, the circuit court found that the evidence presented by wife in support of her

constructive fraud allegation was not specific enough or strong enough to "produce in the mind of

the trier of facts a firm belief or conviction as to the allegations sought to be established."[7]

Seemann, 233 Va. at 293 n.1, 355 S.E.2d at 886 n.1.  It was the circuit court's role to weigh the

evidence, and it is not this Court's role to reweigh that evidence on appeal.  See Beasley, 238 Va. at

51, 380 S.E.2d at 888.  Accordingly, we must affirm the circuit court's finding that constructive

fraud was not proven by clear and convincing evidence.

### 2. *Unconscionability*

In her second assignment of error, wife challenges the circuit court's finding that the PSA

was not unconscionable and argues that the circuit court "erred as a matter of law by holding that

there was not a gross disparity in the distribution of the marital estate" under the terms of the PSA.

---

[6] While the circuit court did not find all of husband's testimony to be credible or to be entitled to significant weight, the circuit court did not reject this specific portion of husband's testimony that he had e-mailed wife a version of the PSA in early December 2010.

[7] As explained *supra*, several circumstances from the record in the circuit court strongly suggest the *lack* of a "special relationship" between the parties on December 24, 2010.  The circuit court, thoroughly considering all of the evidence during its bench ruling, did identify some other circumstances in the record that could perhaps tend to point to a different conclusion – i.e., that the parties had filed joint tax returns even after their separation, that husband entrusted wife with his separate checkbook on those occasions when he was away from the country, and that wife testified that she trusted husband.  However, the circuit court (acting as the factfinder here) weighed all of the evidence in this case – and, in the end, it determined that the required "special relationship" between wife and husband was not supported by clear and convincing evidence.

Wife further asserts in this assignment of error that wife "received all of the marital debt, whereas [husband] received none, and [wife] received only unbargained for, non-monetary considerations which did not affect the parties' respective portions of the marital estate." Concerning unconscionability, this Court has explained:

> While the question of unconscionability is a matter of law, the underlying facts must be determined by the fact finder, and on appeal we determine whether there is sufficient evidence to support the factual findings. If there is credible evidence in the record supporting the factual findings made by the trier of fact, we are bound by those findings regardless of whether there is evidence that may support a contrary finding.

Galloway v. Galloway, 47 Va. App. 83, 92, 622 S.E.2d 267, 271-72 (2005). In order to establish that the December 24, 2010 PSA was unconscionable, wife was required to prove "*both* 1) a gross disparity existed in the division of assets *and* 2) overreaching or oppressive influences" by clear and convincing evidence. Id. at 92, 622 S.E.2d at 271 (emphasis added); see Drewry, 8 Va. App. at 463, 383 S.E.2d at 12 (explaining that the grounds alleged to void or rescind the agreement must be proven by clear and convincing evidence).

> A person may legally agree to make a partial gift of his or her property or may legally make a bad bargain. But *gross disparity* in the value exchanged is a significant factor in determining whether oppressive influences affected the agreement to the extent that the process was unfair and the terms of the resultant agreement unconscionable.

Derby, 8 Va. App. at 28, 378 S.E.2d at 79 (emphasis added). Here, the circuit court indicated that the second prong of the unconscionability analysis – i.e., overreaching conduct by husband – was established. However, the circuit court specifically found that wife failed to satisfy the first prong of the unconscionability analysis – i.e., a "gross disparity" in the terms of the PSA. See Galloway, 47 Va. App. at 92, 622 S.E.2d at 271-72.

In its bench ruling at the conclusion of the December 20, 2012 evidentiary hearing, the circuit court first addressed how to set the "baseline" for determining whether there was a "gross

disparity" in the terms of the PSA.[8] The circuit court selected the following "baseline" – "what could [wife] likely have gotten" without the PSA versus "what did she get" under the terms of the PSA. The circuit court's selection of this "baseline" was reasonable under the circumstances – given that the very few marital assets disclosed in the record lack much or even any equity. Using this baseline, the circuit court inferred that the PSA calls for wife to receive about half of the stream of monthly spousal support and monthly military retirement benefits that she otherwise could have received without the PSA. In other words, the PSA provides that the combined amount of spousal support and military retirement benefits owed to wife cannot exceed $1,500 per month – whereas the circuit court inferred that wife could perhaps have received approximately $3,000 per month from those sources absent the PSA. While the evidence revealed a disparity between what wife receives under the PSA when measured against what she would have received but for the PSA, the circuit court did not find that this difference rose to the type of "gross disparity" that is required to invalidate a signed agreement on the ground that the agreement is unconscionable.

In addition, the circuit court expressly considered on the record that the PSA also calls for wife to receive title to the marital home and the Mercedes Benz automobile – while also assuming the debts on those two significant assets.[9] As she argued in the circuit court, wife asserts on appeal that she cannot afford to pay for the marital home and for an expensive automobile under the terms of the PSA. She emphasizes that the PSA's terms reduce husband's customary $5,000 monthly

---

[8] As the circuit court noted, there were "virtually zero marital assets in this case." Specifically, the record reveals that there was no equity in the marital residence (which wife received under the PSA) or either of the parties' vehicles (one of which wife received under the PSA and one of which husband received).

[9] Wife adds that the debt on the marital home was increased because $18,000 to $20,000 in prior marital credit card debt was eliminated when the mortgage on the marital home was refinanced around the time of the parties' separation or shortly thereafter. The circuit court took this circumstance into account when rendering its decision.

payment to wife (under the parties' informal arrangement prior to the PSA) down to $2,500 per month.

The circuit court quite candidly remarked that the PSA's terms were "not fair" and "not equal" – adding that "I think [husband] knew" that it "is a very good deal" for him. However, the circuit court's conclusion that wife did not prove unconscionability reflects the Supreme Court's statement that Virginia's courts "cannot relieve one of the consequences of a contract merely because it was unwise." Owens v. Owens, 196 Va. 966, 974, 86 S.E.2d 181, 186 (1955). Instead, it was wife's burden to establish that the terms of the PSA are so unfair that they actually create a "gross disparity" between what wife receives in the PSA and what husband receives in the PSA. See Derby, 8 Va. App. at 28, 378 S.E.2d at 79.

In this case, the circuit court made a significant factual finding that wife "does get things she clearly wanted" in the PSA. The circuit court found that it "was very important" to wife that she receive the marital home in any property settlement agreement. We must defer to these factual findings because there is evidence in the record to support them. Under the terms of the PSA here, in addition to receiving one of the parties' automobiles, wife receives the marital home – and all of its furnishings.

In short, the circuit court explained:

> It's a bad deal. But it's not grossly disparate. [Wife] does get things that she clearly wanted. And for many people, remaining in the house where they've lived with their children for many years is an important factor even if it makes very poor economic sense.
>
> In fact, this Judge sees it all the time. People make emotional attachments to property that they can't in the real world afford. And I think they do that to their detriment. But I think this is a situation where this house was very important to [wife,] as important as it was keeping the child or children in the house and living there.

Under settled principles, we must give deference to the factual findings made by the circuit court judge who presided over the *ore tenus* hearing in this case. See Richardson v. Richardson,

242 Va. 242, 246, 409 S.E.2d 148, 151 (1991); see also Sutherland v. Sutherland, 14 Va. App. 42, 44, 414 S.E.2d 617, 618 (1992) ("[T]he decision of the trial judge is peculiarly entitled to respect for [that judge] saw the parties, heard the witnesses testify and was in closer touch with the situation than the [appellate] Court, which is limited to a review of the written record."). Here, the circuit court had the opportunity to observe all of the testimony and thoroughly considered all of the evidence – and found that the terms of the PSA satisfy some, although certainly not all, of the subjects of negotiation that were important to wife. The circuit court ultimately concluded that the terms of the PSA, while unfair to wife, were not so grossly disparate as to support a finding of unconscionability. Viewing the record in the light most favorable to husband, as we must since he prevailed below, we cannot conclude that the circuit court's conclusion here was reversible error.

## B.  ATTORNEYS' FEES AND COSTS

In her third assignment of error, wife challenges the circuit court's decision to award husband $23,580.90 in attorneys' fees and costs under the enforcement provision of the PSA. Although wife does not abandon her argument raised in the first two assignments of error that the PSA is invalid and unenforceable, she argues here in the alternative that the award of attorneys' fees and costs was not supported by the terms of the PSA.

"'Marital property settlements . . . are contracts subject to the rules of construction applicable to contracts generally, including the application of the plain meaning of unambiguous contractual terms.'" Rutledge v. Rutledge, 45 Va. App. 56, 64, 608 S.E.2d 504, 508 (2005) (quoting Pysell v. Keck, 263 Va. 457, 460, 559 S.E.2d 677, 678 (2002)). "[T]he contract is to be 'construed as written, without adding terms that were not included by the parties.'" Id. (quoting PMA Capital Ins. Co. v. U.S Airways, Inc., 271 Va. 352, 357-58, 626 S.E.2d 369, 372 (2006)). "When the terms of a contract are clear and unambiguous, the terms will be given their plain and

ordinary meaning." Marina Shores, Ltd. v. Cohn-Phillips, Ltd., 246 Va. 222, 225-26, 435 S.E.2d 136, 138 (1993).

Wife relies on a portion of the PSA indicating that the parties "agree that each will bear his and her own cost of representation by any attorneys for the negotiation and preparation of this Agreement and for the fees and costs which may be incurred in the obtaining of a divorce." However, that provision relied upon by wife must be read in light of the rest of the PSA as a whole. Pertinent to this appeal, the PSA requires the parties to present the PSA for incorporation into a divorce decree – and also directs that a party found to be in substantial violation of the PSA's terms shall bear the other party's reasonable attorneys' fees and costs.[10] While another portion of the PSA appears to anticipate challenges to the validity or enforceability of the PSA in whole or in part, wife was *not* successful in opposing the incorporation of the PSA into a final divorce decree. Wife did not substantially prevail in her challenge of the PSA in the circuit court, and we have now affirmed that decision *supra*. Therefore, Paragraph 14 of the PSA entitled husband in the circuit court to an award of reasonable attorneys' fees and costs "incurred in the enforcement of this Agreement."

---

[10] Paragraph 18 of the PSA, entitled "Incorporation into Divorce," states, in pertinent part:

> The parties agree that this Agreement in its entirety shall be submitted to the Court in which any divorce action is filed and it shall be ratified, approved and shall be incorporated into and made a part of the Final Decree of that action. The parties each agree not to oppose such incorporation and they agree that subsequently, this Agreement shall be enforceable as part of said decree or independently as a contract between the parties.

In addition, Paragraph 14, entitled "Enforcement," states, in pertinent part:

> In the event that either party should take legal action against the other by reason of the other's failure to abide by this Agreement, the party who is found to be substantially in violation of this Agreement shall pay to the party who substantially prevails in said action, the prevailing party's attorney's fees, investigators [sic] costs, court costs, and any other costs reasonably incurred in the enforcement of this Agreement.

## III. Conclusion

Although husband's conduct on December 24, 2010 was hardly blameless, the circuit court did not err in concluding that wife failed to prove constructive fraud or unconscionability by clear and convincing evidence.  Furthermore, the circuit court did not err in ordering an award of attorneys' fees and costs to husband, given the contractual terms of the PSA.  We affirm the circuit court, and – as required by Paragraph 14 of the PSA – we must also remand the matter to the circuit court for a determination of the reasonable attorneys' fees and costs that husband incurred in the successful defense of this appeal.

Affirmed and remanded.