# CIRCUIT COURT OF THE CITY OF NORFOLK

Caryn F. Kesser

v.

Lawrence A. Kesser

December 4, 2015

Case No. CL14-1800

BY JUDGE JERRAULD C. JONES

This matter relates to a divorce action, and comes before the Court on Plaintiff Caryn F. Kesser's Motion To Confirm the Validity of the Martial Agreement (the "Agreement") entered by the parties on May 2, 2013.

## Facts

Plaintiff Caryn F. Kesser ("Wife") and Defendant Lawrence A. Kesser ("Husband") were married in Norfolk, Virginia, on May 7, 1994. During their marriage, the parties had three children, Allison Kesser, Emily Kesser, and Eli Kesser. (Compl. 1.) The parties experienced marital difficulties relating to Husband's use of Adderall and regular viewing of pornography. (Tr. at 51-54.) These problems culminated on February 19, 2013, when Husband admitted to having an extramarital affair and Wife ejected Husband from the marital residence. (*Id.* at 50-55.) Shortly thereafter, Husband began seeing a psychiatrist, and the parties began attending weekly therapy sessions with a marital therapist. (*Id.* at 63, 226.)

During March and April 2013, Husband promised Wife that he would stop lying, cease using drugs, and refrain from viewing pornography, and Wife permitted Husband to attend family dinners at the marital home. (Tr. at 62-64.) Husband also sent Wife several emails expressing regret and seeking her forgiveness for his past conduct. (Pl.'s Br. Ex. A-F.) In an email to Wife dated March 24, 2013, Husband wrote:

> I will be more than happy to sign everything over to you. I would like to put my money where my mouth is. . . . Whatever you want to have drawn I will sign, because I know that what I did in the past will never ever occur again. At this point, all I want is for you to believe me [a]nd [that] I have changed [and] for that I will do anything.

(*Id.* Ex. C.) In another email sent on March 24, Husband stated "I do not and did not want you to ever have to worry about money or ever think of going back to work." (*Id.* Ex. A.)

As of April 2013, Wife intended to "try and forgive" Husband, and informed him that reconciliation would be possible if Husband signed a marital agreement and satisfied the following four conditions: (1) no infidelity; (2) no drug use; (3) no pornography; and (4) no lying or dishonesty (the "four conditions"). Although Wife felt distrustful towards Husband, the parties had family dinners with their children, attended family events, and went out to dinner together. (Tr. at 96.) Husband's treating psychiatrist testified that, during this time, Husband was highly motivated to please Wife in order to bring about reconciliation between the parties. (Tr. at 244.)

In April 2013, Wife consulted with an attorney about drafting a marital agreement. (Tr. at 64, 71.) Wife rejected the first draft of the agreement because its language "leaned towards us divorcing," and Wife still intended to remain married to Husband. (*Id.* at 73.) Wife informed Husband that she was having an agreement prepared, and further stated that she would only attempt to forgive him if he signed the agreement. (*Id.* at 373.) Wife also indicated, however, that she would only attempt to enforce the agreement if Husband engaged in additional misconduct in the future. (*Id.*) The parties discussed the agreement's terms and revisions they wanted to incorporate, and Wife sent their revisions to her attorney. (*Id.* at 105, 204-05.) Wife testified that Husband appeared lucid and sober during these discussions. (*Id.* at 104.)

On May 2, 2013, the parties discussed a reviewed version of the agreement. (*Id.* at 105-06.) Wife reiterated that she would not reconcile with Husband if he did not sign the Agreement, and Husband informed Wife that he would sign the Agreement regardless of its contents. (*Id.* at 105-06, 371-73.) Husband did not consult with any attorney about the Agreement. (Tr. at 375.) After discussing portions of the document for approximately fifteen minutes, Husband signed the Agreement, and Wife signed it the following day. (*Id.* at 372.) Wife testified that, when the parties negotiated and executed the Agreement, they were continuing to confide in one another and were functioning as husband and wife. (*Id.* at 165.)

Wife commenced the present divorce action on February 27, 2014, by filing a complaint ("Original Complaint") with the Court seeking a divorce on the basis of continuous separation for a period of six months pursuant to § 20-91(9)(a) of the Code of Virginia. In the Original Complaint, Wife alleged

that the parties separated "with the intention to discontinue permanently the marital cohabitation" on February 19, 2013. (Original Compl. at 2.) Pursuant to leave granted by the Court, Wife filed an amended complaint ("First Amended Complaint"), in which Wife alleged that the parties separated on February 19, 2013, and requested a divorce on the grounds of separation for one year pursuant to Va. Code § 20-91(9)(a). (Am. Compl. at 2.) On May 6, 2014, Wife attempted to file a second amended complaint, in which Wife alleged that the parties separated on June 1, 2013. However, as Wife failed to obtain leave of court to file this amended pleading as required by Rule 1:8 of the Rules of the Supreme Court of Virginia, it was not properly filed, and, therefore, has no effect on the case at bar. Va. Sup. Ct. R. 1:8. Husband filed an Answer and Counterclaim on May 9, 2014, in which Husband alleged that the Agreement was unenforceable due to constructive fraud, fraud in the inducement, duress, and unconscionability.

The trial commenced on April 2, 2015, and the parties presented evidence until April 6. The Court heard closing arguments on November 5, 2015. At this hearing, the parties presented argument on Plaintiff's Motion To Confirm the Validity of the Agreement.

### The Agreement

The Agreement resolves issues of support and provides for the disposition of property in the event that the parties are separated or divorced. At the beginning of the Agreement, the parties stipulate that "it is their intent that their marriage will be a lifetime commitment." (Agreement at 1.) The Agreement further recites that "[t]his Agreement was not unconscionable when it was executed" and that "[t]he parties confirm that they are knowingly, intentionally, freely, and voluntarily signing this Agreement and no one has applied any pressure of any type to cause either party to sign this Agreement." (Agreement ¶¶ 1(a), 18.)

The substantive terms of the Agreement are largely favorable to Wife. Among other terms, the Agreement provides that Husband is fully responsible for all costs and debts associated with the marital home and two other parcels of real property owned by the parties. (Agreement ¶¶ 2(f)-(g), 6(b)(1).) The Agreement further requires Husband to pay Wife $4,000 per month in spousal support and $3,000 per month in child support, and renders Husband fully responsible for the parties' marital debts and all expenses associated with their children's post-high school education. (Id. ¶¶ 7, 10-12.) Moreover, the Agreement provides that Wife will have "exclusive use and occupancy" of the marital home and entitles Wife to one-half of all of Husband's "deferred compensation," including pensions, retirement plans, and IRA accounts. (Id. ¶ 6(b)(1), (c).) The Agreement also requires Husband to pay all premiums associated with Wife's current health insurance policy and to continue providing medical insurance for the parties' children. (Id. ¶ 16.)

Husband urges the Court to set aside the Agreement on three grounds. First, Husband contends that the Agreement is unconscionable because its terms are highly unfavorable to Husband and because Wife engaged in overreaching or oppressive conduct during the negotiation process by deceptively indicating that the parties would resume the marital relationship if Husband executed the Agreement. Second, Husband contends that the First Amended Complaint states that Wife formed the intent to separate from Husband on February 19, 2013. Contrary to this statement, Husband asserts that Wife told Husband that she was willing to resume the marital relationship just before the parties executed the Agreement in May 2014. Husband emphasizes that, as a married couple, the parties owed each other a heightened fiduciary duty, and argues that Wife breached this duty by misleading Husband into signing the Agreement by suggesting that doing so could mend the parties' marriage, even though she had already formed the intent to separate from Husband. Husband concludes that, in view of this conduct, he was induced to execute the Agreement by fraud. Third, Husband alleges that he signed the Agreement under duress and that the Court should thus refuse to enforce the Agreement.

## Standard of Review

Marital agreements, such as the one at issue here, "are favored in the law and . . . will be enforced unless their illegality is clear and certain." *Cooley v. Cooley,* 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980). Notably, courts cannot refuse to enforce an otherwise valid agreement merely because a party made an unwise decision to enter a contract with unfavorable terms. Indeed, courts "are not guardians in general" to people who decide to enter contracts, *Jackson v. Seymour,* 193 Va. 735, 741, 71 S.E. 181, 185 (1952), and courts "cannot relieve one of the consequences of a contract merely because it was unwise," *Owens v. Owens,* 196 Va. 966, 974, 86 S.E.2d 181, 186 (1980). The party opposing enforcement of the agreement must "prove by clear and convincing evidence the grounds alleged to void or rescind the agreement." *Drewry v. Drewry,* 8 Va. App. 460, 463, 383 S.E.2d 12 (1989) (citing *Winn v. Aleda Constr. Co.,* 227 Va. 304, 308, 315 S.E.2d 193, 195 (1984); *Gill v. Gill,* 219 Va. 1101, 1106, 254 S.E.2d 122, 125 (1979)). If the agreement contains recitations stating that it is not unconscionable, such recitation "shall create a *prima facie* presumption that they are factually correct." Va. Code §§ 20-151(B), 20-155 (1950).

## Analysis

The Court has fully considered the pleadings, oral arguments, and other applicable authorities. In view of the totality of the evidence, the Court holds that the Agreement is not unconscionable and is not invalid on the basis of fraud in the inducement.

## A. *The Agreement Is Not Unconscionable*

Husband contends that the Court should refuse to enforce the Agreement because it is unconscionable. In particular, Husband asserts that, under the allegations of the Original Complaint, Wife formed the intent to permanently separate from Husband on February 19, 2013. Husband argues that Wife's conduct and statements indicating that she was open to reconciling with Husband during the spring of 2013 were necessarily disingenuous, and that Wife manipulated Husband's desire for reconciliation to procure his agreement to sign an agreement that was highly unfavorable to his interests. Husband, therefore, concludes that the Agreement is unconscionable because the terms of the Agreement are grossly unfair and Wife engaged in oppressive conduct in deceiving Husband regarding her intent to continue the marital relationship.

Under Virginia law, a marital agreement is unenforceable as unconscionable if the party opposing its enforcement shows both (1) that "a gross disparity existed in the division of assets"; and (2) that "overreaching and oppressive influences created an unfair process." *Galloway v. Galloway,* 47 Va. App. 83, 92, 622 S.E.2d 267, 271 (2005). A party may prove that "overreaching and oppressive influences created an unfair process" by showing that the circumstances surrounding the bargaining process were inequitable, and either (a) bad faith in the form of "concealments, misrepresentations, undue advantage, [or] oppression on the part of the one who obtains the benefit" under the agreement, or (b) "ignorance, weakness of mind, sickness, old age, incapacity, pecuniary necessities, and the like" on the part of the party who did not receive the benefit under the agreement. *Sims v. Sims,* 55 Va. App. 340, 349, 685 S.E.2d 869, 873 (2009) (quoting *Derby v. Derby,* 8 Va. App. 19, 28-29, 378 S.E.2d 74, 79 (1989)). In general, "a spouse can give away his or her entire portion of the marital estate as long as there is no oppressive conduct by the other spouse." *Galloway,* 47 Va. App. at 93, 622 S.E.2d at 272.

Alternatively, an agreement may also be unconscionable if the moving party proves both (1) a gross disparity in the division of assets, and (2) " 'pecuniary necessities' coupled with a degree of infirmity" on the part of the moving party. *Sims,* 55 Va. App. at 352, 685 S.E.2d at 874-75. Notably, a showing of " 'pecuniary necessities' and infirmity satisfies the second prong of the unconscionability test without the need for separate proof of overtly 'oppressive influences' exerted by" the other spouse. *Id.* Finally, "[i]f inadequacy of price or inequality in value are the only indicia of unconscionability, the case must be extreme to justify equitable relief." *Derby,* 9 Va. App. at 29, 378 S.E.2d at 70.

In *Derby v. Derby,* the parties signed a property agreement that conveyed "the entire value of essentially all valuable real estate which the parties owned" to the wife. 8 Va. App. at 22-23, 378 S.E.2d at 75. The evidence indicated that the husband suffered from emotional problems and believed

that he could save the parties' marriage by signing the agreement. However, during the bargaining process, the wife "misrepresented her intentions about returning to the marriage," failed to disclose her existing desire to obtain a divorce, and actively concealed an adulterous affair in which she was engaged. *Id.* at 31, 378 S.E.2d at 80. Moreover, both parties had retained counsel, but the wife deliberately presented the agreement to the husband early in the morning when she knew his attorney would not be available to advise him and the husband signed the agreement before reviewing its terms with his attorney. *Id.* at 22, 378 S.E.2d at 75. The Court of Appeals held that the agreement was unconscionable, concluding that there was a "shocking" disparity in the property the parties received under the agreement and that the wife "took advantage" of the husband's emotional problems to obtain an unfair agreement and engaged in oppressive or overreaching conduct. *Id.* at 30, 378 S.E.2d at 80-81.

In *Galloway v. Galloway,* the marital agreement provided the husband with 94% of the parties' assets. 47 Va. App. at 92, 378 S.E.2d at 272. The evidence further showed that the wife had recently inherited $30,000 and a home worth $275,000, possessed job skills, could likely obtain a new job, and voluntarily declined to hire an attorney after being given an opportunity to do so. *Id.* at 87-88, 378 S.E.2d at 269. The Court of Appeals held that, even if the agreement created a "gross disparity" in the value of the assets received by each party, the agreement was not void as unconscionable because there was no showing that the husband engaged in oppressive conduct and no evidence of "pecuniary necessities" on the wife's part sufficient to render the agreement unconscionable. *Id.* at 92, 94-95, 622 S.E.2d at 272-73.

In *Sims v. Sims,* the agreement provided the husband with nearly all of the parties' assets while the wife received only an automobile and a small number of personal items, thereby leaving the wife "penniless and with no practical means for supporting herself." *Id.* at 352-53, 685 S.E.2d at 874-75. Additionally, the wife suffered from various physical ailments, possessed a third grade education, and had qualified to receive food stamps at the time of the hearing before the trial court. The Court of Appeals held that the agreement was unconscionable because (1) there was a gross disparity in the value of the assets the parties received under the agreement, and (2) the wife faced "pecuniary necessity" and suffered from an infirmity or disability. *Id.* at 353-54, 685 S.E.2d at 875.

In *Guirguis v. Salib,* No. 0038-12-1, 2013 Va. App. LEXIS 12 (Jan. 15, 2013), the parties executed a separation agreement that required the husband to pay the wife at least $10,000 per month in spousal support. *Id.* at *3. The husband initially informed the wife that he would be unable to pay this amount. *Id.* at *6. However, the parties agreed to meet with a priest in their church, who encouraged the husband to sign the agreement as a sign of good faith to the wife and told the husband that the wife had promised

not to enforce the agreement. The husband informed the priest that he could not afford the spousal support payments specified by the Agreement, but agreed to sign the agreement out of respect for the priest. *Id.*

The Court of Appeals held that the agreement was not unconscionable. 2013 Va. App. LEXIS at *25. The court found the facts to be distinguishable from *Derby* because the record did not show that the wife "misrepresented her interest in reconciliation," "took advantage of husband's interest in reconciliation in order to procure his signature," or presented the agreement to husband in a manner that would prevent him from seeking legal advice. *Id.* at *19-20. The court further held that the pressure placed on the husband to sign the agreement by the priest did "not constitute oppressive or undue influence," but rather resulted from a mutual effort by both parties to reconcile and repair their relationship through the aid of their priest. *Id.* at *19. Finally, the court rejected the argument that the wife manipulated the husband's known desire to reconcile to procure his signature to the agreement:

> It is clear from the record that husband's signing the separation agreement was necessary before wife would attempt to reconcile. Wife articulated this fact, and there is no evidence in the record to suggest that she misrepresented her interest in reconciling simply to procedure husband's signature. . . . Absent any such misrepresentation, wife's request that husband sign the separation agreement cannot reasonably be construed as oppressive.

*Id.* at *21-22. The fact that the wife told the husband that she would only consider reconciliation if he signed the agreement thus did not constitute an "overreaching or oppressive influence" on the husband's decision to sign the agreement that could satisfy the second prong of the *Gallagher* test.

In the case at bar, the Agreement contains the following recitations:

> This Agreement was not unconscionable when it was executed. . . . The parties further acknowledge that each of them believes this Agreement to be fair and reasonable in establishing the rights and claims that each will have in the property of the other and that each of them fully intends to be bound by this Agreement. . . . The Parties confirm that they are knowingly, intentionally, freely, and voluntarily signing this Agreement and no one has applied any pressure of any type to cause either party to sign this Agreement. . . . The parties expressly acknowledge that each has fully reviewed the terms

and provisions of this Agreement and that the execution of this Agreement by each party is his or her free and voluntary act.

Agreement ¶¶ 1(a), 18, 28. Pursuant to §§ 20-151(B) and 20-155 of the Code of Virginia, these recitations "create a *prima facie* presumption that they are factually correct" and that the Agreement is not unconscionable, and Husband bears the burden of rebutting this presumption by clear and convincing evidence. *See, e.g., Sims*, 55 Va. App. at 349, 685 S.E.2d at 873.

In view of the facts presented, the Court concludes that Husband has failed to rebut the presumption of validity established by the recitations in the Agreement and has not established that the Agreement is unconscionable by clear and convincing evidence. Specifically, the record does not reveal any inequitable circumstances, concealments, misrepresentations, undue advantage, or oppressions, and, therefore, fails to show that Wife engaged in the sort of "overreaching and oppressive" conduct sufficient to satisfy the second prong of the *Galloway* test.

The facts here are distinguishable from the circumstances that rendered marital agreements unconscionable in *Sims* and *Derby*. In *Sims,* the wife's age, lack of education, and health problems placed her in such "pecuniary necessity" that she became a public charge before the court decided the case. Combined with the "gross disparity" in the agreement's terms, these circumstances rendered the agreement in that case unconscionable. 55 Va. App. at 352, 685 S.E.2d at 875. In *Derby,* the wife actively concealed an ongoing adulterous relationship, presented the husband with a copy of the agreement at issue at a time when she knew that his attorney would not be available, and took advantage of the husband's desire to reconcile by affirmatively misrepresenting her intentions to remain married. 8 Va. App. at 22-23, 378 S.E.2d at 75-76.

In this case, the record is devoid of any clear indication of such oppressive conduct on Wife's part. Wife did not conceal any misconduct from Husband, and the evidence fails to establish that Wife engaged in deceit or misrepresentation to take advantage of Husband's desire to return to the marital home and continue the marriage. In contrast to *Derby,* the parties discussed the terms of the Agreement before Wife presented it to Husband for his signature, and Husband had the opportunity to review and suggest modifications the terms as he desired. Further, as in *Galloway* and *Sims,* Husband had ample opportunity to hire an attorney to advise him regarding the terms and potential consequences of the Agreement, but apparently chose not to do so.

At trial, Husband presented witness testimony from two of the parties' friends that Husband claims illustrates that Wife was the controlling individual in the parties' household, Wife acted vindictively toward Husband and their friends after their separation, Husband was desperate to reconcile with Wife during spring of 2013, and Husband did not understand the terms of the Agreement when he signed it. Husband also introduced

testimony from a psychiatrist who treated Husband between February and May 2013 that Husband suffered from depression and anxiety during the spring of 2013 and would have done anything to obtain Wife's forgiveness.

This evidence, while relevant, fails to clearly and convincingly show that Wife engaged in conduct prior to Husband's signing the Agreement that could be deemed "overreaching and oppressive" so as to render the Agreement unconscionable. This testimony does not show, for instance, that Wife lied to Husband, made any misrepresentations, or concealed any facts material to the negotiation of the Agreement. Therefore, the Court finds that this evidence does not show the type of oppressive conduct necessary to support a finding of unconscionability.

This case is most closely analogous to *Guirguis*. In both cases, the nonmoving party made it clear that reconciliation would only be possible if the moving party signed the agreement, and the agreement obligated the moving party to assume burdensome financial obligations. Here, as in *Guirguis*, the evidence does not demonstrate that Wife "misrepresented her interest in reconciling simply to procure" Husband's signature or engaged in any other form of oppressive conduct that rendered the parties' negotiations of the terms of the Agreement unfair. Rather, the record shows that Wife informed Husband that reconciliation would only be possible if he signed the Agreement and complied with the four specified conditions regarding his behavior. Contrary to Husband's assertion that Wife only feigned an interest in reconciliation to manipulate Husband into signing the Agreement, the evidence shows that Wife fully intended to continue the marriage if these conditions were satisfied. Therefore, in clear contrast to *Derby*, the facts do not establish that Wife misrepresented her intentions about resuming the marital relationship to take advantage of Husband's desire to reconcile. Although it is not binding authority,[1] the Court is persuaded by the rationale employed by the Court of Appeals in *Guirguis*, and concludes that Wife's statement that Husband must sign the Agreement as a condition of any reconciliation does not constitute "oppressive" conduct where Husband has not clearly and convincingly shown that Wife engaged in misrepresentation or deceit.

Husband has also failed to establish unconscionability on the basis of pecuniary necessity, as recognized by the Court of Appeals in *Sims*. Unlike the spouse in *Sims*, whose lack of skills and assets rendered her a public charge before the final disposition of the case, Husband is well-educated and possesses considerable job skills. Although the Agreement imposes burdensome financial obligations on Husband, the circumstances of this case plainly do not rise to the same level of egregiousness present in *Sims*,

---

[1] Rule 5A:1(f) of the Rules of the Supreme Court of Virginia provides that "[t] he citation of judicial opinions, orders, judgments, or other written dispositions" issued by the Court of Appeals of Virginia "that are not officially reported . . . is permitted as informative, but shall be received as binding authority." R. Sup. Ct. Va. 5A:1(f).

as Husband is not in imminent danger of becoming a public charge upon enforcement of the Agreement. Consequently, the Court holds that the Agreement does not place Husband in such "pecuniary necessity" that the Agreement is unconscionable solely on the basis of its terms.

In short, the evidence does not clearly and convincingly show that Wife engaged in any "oppressive and overreaching" conduct sufficient to satisfy the second prong of the *Galloway* test. Husband has thus failed to rebut the *prima facie* presumption that the Agreement is not unconscionable established by the recitations contained therein. Because one of the two prongs of the *Galloway* test is not satisfied, the Court holds that the Agreement is not unconscionable.

## B. *Husband Has Failed To Demonstrate Fraud*

Husband next argues that the Agreement is unenforceable on the ground of fraud in the inducement. In essence, Husband claims that Wife deceived Husband during the spring of 2013 by indicating that she would consider reconciling with him if he signed the Agreement, even though she had already developed an intent to end their marriage in February. Husband argues that this conduct constitutes constructive fraud which induced him to sign the Agreement and that the Court should thus refuse to enforce the Agreement.

To establish fraud, the moving party must show that: (1) the opposing party made a "material false misrepresentation"; (2) the moving party believed that the misrepresentation was true; (3) the opposing party intended for the moving party to rely or act on that misrepresentation; (4) the moving party relied or acted on the misrepresentation; and (5) the moving party sustained damages as a result of his reliance on the misrepresentation. *Nationwide Ins. Co. v. Patterson,* 229 Va. 627, 629, 331 S.E.2d 490, 492 (1985). The moving party must prove constructive fraud "by clear, cogent, and convincing evidence." *Wells,* 229 Va. at 77, 326 S.E.2d at 675 (citing *Nuckols v. Nuckols,* 228 Va. 25, 37, 320 S.E.2d 734, 740 (1984)).

Fraud may take the form of actual or constructive fraud. Constructive fraud is the "[b]reach of a legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others or violate confidence." *Wells v. Weston,* 229 Va. 72, 77, 326 S.E.2d 672, 675-76 (1985). To show constructive fraud, the plaintiff is, therefore, required to demonstrate the existence of a legally enforceable duty between the parties.

Virginia courts have recognized that married persons owe a fiduciary duty to their spouse in the context of the marital relationship. *See, e.g., Derby,* 8 Va. App. at 27, 378 S.E.2d at 78 (recognizing that "[m]arriage is a confidential relationship of trust imposing the highest fiduciary duty upon the spouses in their intermarital dealings."). This fiduciary duty exists while the confidential marital relationship remains intact. Conversely, this duty

does not exist when the confidential marital relationship has been severed and the parties engage in arms-length dealings with one another. *Derby,* 8 Va. App. at 27, 378 S.E.2d at 78. "Determining whether this special fiduciary relationship still exists between parties who have separated – or whether the special relationship has been severed – is a threshold issue in cases addressing whether a property settlement agreement is invalid due to constructive fraud." *Velez v. Lizardi,* No. 0899-14-4, 2015 Va. App. LEXIS 68 at *11 (Mar. 3, 2015) (citing *Webb v. Webb,* 16 Va. App. 486, 491, 431 S.E.2d 55, 59 (1993)). Therefore, the Court must initially determine whether the confidential marital relationship between the parties remained intact while the Agreement was prepared between March and May 2013, or whether that relationship was severed during or prior to that time.

In *Derby,* discussed *supra,* the married parties negotiated and executed a property settlement agreement in contemplation of divorce that was highly favorable to the wife. 8 Va. App. at 22, 378 S.E.2d at 75. The husband contended that the wife fraudulently induced him to sign the agreement by causing him to believe that she would return to the marital home and resume the marital relationship if he signed the agreement. *Id.* at 27, 378 S.E.2d at 78. Such conduct, the husband concluded, constituted constructive fraud. *Id.*

The Court of Appeals rejected the husband's argument, and held that the wife owed no fiduciary duty to the husband because the parties "were dealing with each other at arm's length insofar as negotiating the property settlement agreement was concerned." *Id.* Importantly, a divorce action was already pending when the parties engaged in negotiations concerning the agreement, and the agreement expressly stated that it would be incorporated into any final decree of divorce. *Id.* at 27-28, 378 S.E.2d at 78. Although the wife may have known that the husband hoped that the parties would repair their marriage if he signed the agreement, the Court found that she "did not misrepresent or conceal the terms or effect of the agreement or do any act sufficient to constitute fraud." *Derby,* 8 Va. App. at 28, 378 S.E.2d at 78.

In *Drewry v. Drewry,* 9 Va. App. 460, 383 S.E.2d 12 (1989), the parties orally discussed the terms of a property settlement agreement, and the husband hired an attorney to reduce the parties' agreement into a written document. 9 Va. App. at 463, 383 S.E.2d at 13. Approximately one month before signing the agreement, the wife had been hospitalized for depression for over thirty days, and she continued to receive treatment until the day before she signed the agreement. *Id.* at 465, 383 S.E.2d at 13-14. The attorney hired by the husband prepared a written agreement memorializing the parties' understanding, and both parties signed this agreement. *Id.* at 464, 383 S.E.2d at 13. Shortly thereafter, the husband sold real property that he received under the agreement for a larger sum of money than the value he provided to wife during their negotiations. *Id.* The wife argued that the agreement was invalid on the basis of constructive fraud because, in

view of the wife's health issues, the husband owed her a heightened duty of care and violated that duty by misrepresenting the value of the real property he received under the agreement. *Id.* at 465, 383 S.E.2d at 13.

The Court of Appeals rejected the wife's arguments. Noting that the parties had separated with the intent to divorce, the court held that the wife's health issues did not, without more, place the parties in a special relationship or otherwise impose a heightened duty of care on the husband. *Drewry,* 9 Va. App. at 470, 383 S.E.2d at 17. Even if the husband owed such a duty, the wife failed to show that he concealed or misrepresented the value of the real property or any other material fact. *Id.* at 471-72, 383 S.E.2d at 17-18. The court, therefore, concluded that, "[w]ithout a showing that the husband in some way misrepresented or concealed material facts which affected the terms of the agreement, there is no evidence to support a finding of constructive fraud." *Id.* at 471, 383 S.E.2d at 18 (citing *Derby,* 8 Va. App. at 28, 378 S.E.2d at 78).

In *Webb v. Webb,* 16 Va. App. 486, 431 S.E.2d 55 (1993), the parties negotiated a property settlement agreement while still residing together in the marital home. 16 Va. App. at 492, 431 S.E.2d at 59. The husband was an attorney who possessed superior knowledge about divorce law and the parties' finances "that put him in a greatly superior position during the negotiation of the agreement," while the wife lacked such specialized knowledge and suffered from various physical and emotional health issues. *Id.* at 488, 492, 431 S.E.2d at 58, 60 (internal quotation marks omitted). The husband drafted the agreement and gave the wife legal advice about the agreement and other aspects of the parties' divorce. *Id.* at 489, 492, 431 S.E.2d at 59-60. Further, the husband failed to disclose certain pension assets that were material to the negotiation of the Property Settlement Agreement, and discouraged the wife from obtaining independent legal advice "at a critical juncture" in the negotiations. *Id.* at 492, 431 S.E.2d at 60.

The Court of Appeals held that a special confidential relationship existed between the parties when they negotiated the agreement and that the husband breached the fiduciary obligation he owed to wife by misrepresenting and concealing material financial information and discouraging the wife from seeking independent legal counsel. *Webb,* 16 Va. App. at 493-94, 431 S.E.2d at 60-61. This breach constituted fraud, the court concluded, because the wife relied on the husband's misrepresentations in signing the agreement and consequently suffered damages. *Id.* at 493-94, 431 S.E.2d at 61. The court distinguished *Drewry,* noting that no fraud occurred in that case because the husband did not discourage the wife from obtaining legal advice and did not conceal or misrepresent any facts material to their negotiations. *Id.* at 492-93, 431 S.E.2d at 60.

In *Velez v. Lizardi,* No. 0899-14-4, 2015 Va. App. LEXIS 68 (Mar. 3, 2015), the parties separated in 2005 and hired attorneys to aid in negotiating

a property settlement agreement. 2015 Va. App. LEXIS at *2. The parties never considered reconciling during the five-year long negotiations, but nonetheless remained amicable such that the husband permitted the wife to access his finances to ensure that his bills were paid while he was overseas. *Id.* at *3-4. At a Christmas Eve dinner in 2010, the husband approached the wife in private and asked her to sign a document. *Id.* at *4. He falsely stated that the document was related to his effort to purchase a new home, and that her signature thereon was required. *Id.* at *5. The wife quickly skimmed the document and signed it without closely reading its terms. *Id.* at *4-5. The document was actually a property settlement agreement that resolved the parties' respective rights to property and support. *Id.* at *5.

The Court of Appeals concluded that the agreement was not void on the basis of fraud in the inducement. *Lizardi,* 2015 Va. App. LEXIS at *17-19. The Court noted that the parties had been separated for five years with the intent to enter an agreement that finally settled their property rights, were each represented by counsel, and never considered reconciliation during the negotiation of the agreement. *Id.* at *17. In view of these facts, the Court concluded that the parties were not in a "special or confidential relationship" when the husband presented the agreement to the wife because they were dealing with each other at arms' length. *Id.* at *17-18.

In the case at bar, the parties had not yet permanently separated when they negotiated and executed the Agreement. Although they were no longer cohabiting, the evidence reveals that they continued to spend time together and confide in one another and that neither party had yet formed the intent to permanently separate. The Court thus finds that a special fiduciary relationship existed between the parties when they negotiated and executed the Agreement. As such, the parties were not dealing with one another at arm's length, and each party owed the other "a continuing duty of trust in the negotiation and preparation of" the Agreement. *Webb,* 16 Va. App. at 491, 431 S.E.2d at 59.

Husband contends that Wife deceived Husband by indicating that she would consider reconciling with him when she had already resolved to obtain a divorce, thereby taking advantage of his stated desire to reconcile to procure his signature to an agreement containing terms highly favorable to her and unfavorable to him. Such deceit, Husband argues, constitutes a breach of the fiduciary duty of trust she owed to him in negotiating the Agreement. Husband alleges that he relied on these misrepresentations in deciding to sign the Agreement, and, therefore, concludes that the Agreement is unenforceable due to constructive fraud.

Although such conduct may constitute constructive fraud in certain circumstances, the record here does not support a finding of fraud. Specifically, the evidence does not show that Wife concealed or misrepresented the terms governing the parties' relationship when they signed the Agreement in May 2013. Wife made it clear that she would only be open to reconciling with

Husband if he complied with her specified conditions and that she would not use the Agreement in a divorce proceeding unless Husband engaged in further misconduct. Husband stipulated that he would agree to any terms proposed by Wife because he believed that he would comply with Wife's conditions. Husband had a full opportunity to review the Agreement, and there is no allegation that Wife misrepresented its terms or consequences to Husband prior to his deciding to sign. Therefore, as in *Derby* and *Drewry,* Husband has not shown that Wife engaged in the sort of concealment or misrepresentation of material facts necessary to show constructive fraud.

Moreover, the facts of this case are distinguishable from the circumstances in *Webb,* where the Court of Appeals concluded that a spouse engaged in constructive fraud. Unlike the spouse in that case, Husband has not suggested that Wife discouraged him from obtaining independent counsel to advise him regarding the Agreement. Further, unlike the husband in *Webb,* Husband has not shown that Wife concealed or misrepresented any material information during the preparation of the Agreement. Therefore, Husband has not demonstrated that Wife engaged in the conduct that constituted fraud in *Webb.*

In sum, the evidence does not show that Wife made a "material false misrepresentation" on which Husband relied in deciding to sign the Agreement. Husband, therefore, has not established an essential element of constructive fraud. Accordingly, the Court holds that the Agreement is not unenforceable on this ground.

## C. *Husband Has Failed To Establish Duress*

Husband asserts that the Agreement is unenforceable because Husband signed it under duress. Husband raised this argument in his Answer and Counterclaim, but did not address it in any brief filed in opposition to this Motion.

Duress is some "constraint or danger . . . which is sufficient in severity or in apprehension to overcome the mind and will of a person of ordinary fitness" and encompasses "any wrongful acts that compel a person . . . to manifest apparent assent to a transaction . . . or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction." *Norfolk Div. of Social Services v. Unknown Father,* 2 Va. App. 420, 434-35, 345 S.E.2d 533, 541 (1986). Duress exists only if: (1) the threat at issue was wrongful; (2) the threat prevented the moving party "from exercising his free will"; and (3) "the contract is obtained by reason of such fact." *Id.* at 435, 345 S.E.2d at 541.

Under Virginia law, "duress is not readily accepted as an excuse." *Unknown Father,* 2 Va. App. at 434, 345 S.E.2d at 541 (citing *Seward v. American Hardware Co.,* 161 Va. 610, 639, 171 S.E.2d 650, 662 (1933)). The party alleging duress must prove duress by clear and convincing

evidence. *Id.* (citing *Cary v. Harris,* 120 Va. 252, 255, 91 S.E. 166, 167 (1917); *Ford v. Engleman,* 118 Va. 89, 96, 86 S.E. 852, 855 (1915)).

In the case at bar, Husband has not established duress by clear and convincing evidence. As discussed *supra,* Husband expressly told Wife "I am more than happy to sign everything over to" her, "I would like to put my money where my mouth is," and that, "[w]hatever you want to have drawn, I will sign, because I know that what I did in the past will never ever occur again." These statements demonstrate that Husband was willing to sign an agreement favorable to Wife, and the record does not show that Husband was deprived of an opportunity to negotiate Wife's proposed terms or seek independent legal advice about the Agreement's terms or potential consequences. There is also no evidence that Wife threatened Husband or otherwise coerced him into signing the Agreement against his will. Moreover, the language of the Agreement itself refutes Husband's allegation of duress: the Agreement states that "[t]he Parties confirm that they are knowingly, intentionally, freely, and voluntarily signing this Agreement and no one has applied any pressure of any type to cause either party to sign this Agreement," Agreement ¶ 18, and that "[t]he parties expressly acknowledge that each has fully reviewed the terms and provisions of this Agreement and that the execution of this Agreement by each party is his or her free and voluntary act," Agreement ¶ 28.

The record simply does not clearly and convincingly show that Wife engaged in any threat or other wrongful act that prevented Husband from exercising his free will in entering the Agreement. The Court, therefore, holds that Husband did not sign the Agreement under duress.

### Conclusion

For the foregoing reasons, the Court holds that the Agreement is not invalid due to unconscionability, fraud, or duress. The Court, therefore, holds that the Agreement is enforceable. Accordingly, Wife's Motion To Confirm the Validity of the Marital Agreement is granted.